Next case on the docket is McCarthy, now known as Johnson v. McCarthy, Clause No. 5-12-0042. And Mr. Roberts for the appellant, you may proceed whenever you're ready. May it please the court, Mr. Keller. Good morning, I'm Chuck Roberts. I'm an attorney from Albany, Illinois. I represent the father in this case, Matthew McCarthy. He's the father of two children, Shelby McCarthy and Austin McCarthy. The case that you have before you right now is a very important case for four people, Shelby McCarthy, Austin McCarthy, Matthew McCarthy, and Patricia Johnson. Maybe it's not the cable case you just heard, and maybe it's not the electrical company case that you heard before that, but this is an important case for those four people. And it's an important case for the bar of the state of Illinois, because this court has an opportunity to establish some clarity under the federal rules of evidence that the state not too long ago adopted. And so I have three different arguments I'd like to use my 15 minutes to make here this morning. The first one being that hearsay is not illicit. The second one being that if you take the hearsay out of this case, there's not much left of the trial judge's decision. And the third thing being that it's not harmless error, and I have a third district case decided March 2nd of 2012 that's not in my brief that I'd like to talk to you about on that point. So to begin with, of course, hearsay is not admissible. If you cite a case not in your brief, you're going to need to file a motion to leave to cite additional authority. We're going to let you talk about it today, but you technically will need to do that. Yes, Your Honor. I appreciate that. The first rule is that hearsay is not admissible. That much is clear. But then we get into the exceptions. At the trial of this case, the proponent of the evidence, the mother, sought to introduce a DCFS report on the basis that it was a business record and therefore would be within the exception that would be found in Illinois Evidence Rule 803, Parent 6. And apparently from their brief, they've abandoned that position and taken a different position here in the appellate court. But with regard to 803, Parent 6, on page 28 of our brief, we cite the Hernandez decision. And we talk about something that I think is somewhat important for consideration, and that would be that there are standards for a foundation if you're going to use 803, Parent 6. And United States v. Hernandez is a Tenth Circuit case. It indicates the person who witnessed the event needs to testify. And it indicates that the person who records the event must testify to the accuracy of their transcription. So the federal rules of evidence have this as a safeguard to assure that the evidence is valuable. You'll remember that when we're talking about exceptions for the hearsay rule, we need to have some safeguard. There needs to be an assurance that it's not something that shouldn't be considered. Now, on appeal, in the brief for the mother, 803, Parent 8 is what's cited as the exception. That's a public records exception, and we talk about that on page 4 of our reply. What do you do when the person who wrote the report for DCFS is no longer around? Does that just mean that you can't ever get the report into evidence? Well, she is around. But what if she wasn't? But if she wasn't around, then you can get the report in only for the purpose of showing that a report was done. Regarding her findings and things, I think you'd have to go to the original source of the evidence. So the statute that says the DCFS report is admissible, you say he's abandoned that. I didn't see that he abandoned that. But that's a statutory mandate that allows the report. Well, I think the court can find admissibility for any reason in the statute. But I don't think that 803 Parent 6 necessarily says that DCFS reports go in. Under Patton v. Armstrong, this court long ago decided 40 years ago, as a matter of fact, this is the 40th anniversary of the case of Patton v. Armstrong. And this court decided that DCFS reports do not go into evidence. And that decision has never been overruled and remains the law in the 5th District and I believe in the state of Illinois at this point in time. That decision, the 5th District decision, was written by Judge Jones, who sat on this bench, and he had a pretty clear opinion of what he thought DCFS reports, when he wrote that decision of Patton v. Armstrong. The decision is in 6 Illinois Appellate 3998. And it's a decision that should stand as stare decisis. And I don't think it's overruled. Let me clarify something. You keep referring to 803-6. I thought it was 803-8. That's the argument on appeal. In the final court, the argument was 803-6. Okay. And that's the change that took place. 803-8 concerns public records. And 803-8 is very interesting, Judge Waxman, because 803-8 in particular concerning public records has an exclusion within the exception. As you'll recall, all of the matters under 803 and 804 of the Illinois rule of evidence are exceptions. But if you look at 803-8, there's an exclusion at the end of the exception. As I understand it, these exclusions override the exception. In other words, they take it out of admissibility. And basically, that exclusion takes out police accident reports and criminal cases, medical records and matters observed by police officers and other law enforcement personnel, unless the source of information or other circumstances indicate lack of trustworthiness. So I don't think police reports simply go in. And I don't think DCFS reports should go in either. They're a candidate to police reports. They're made by a person working for a state agency who is doing an investigation. So they're very similar. And if you read Judge Jones' opinion written 40 years ago, the same thing should apply today because DCFS reports continue to be unreliable. As one of the witnesses in this case testified concerning the lack of reliability of these reports, the way they're done now, you have your computer screen, and you just click information into the framework that DCFS has established to write their reports. So you're just clicking in information according to the DCFS workbook. And that doesn't necessarily mean that the information being provided is in any way accurate. So based on those matters, it would just seem that the clearest thing is that DCFS reports shouldn't be admitted where you have Phil McClark, a DCFS employee, who didn't come in for it, didn't testify concerning the foundation of the matter. And so, therefore, most of the trial judge's findings concerning my client are based on a DCFS report, and it's clearly not admissible. The same should apply to the testimony of Max Beam. I'm sorry. I went historical. Max Beam. His testimony concerned something that occurred out of the presence of the children at a military base where my client was trying to, as an officer of the military, take a junior officer, and the situation is not something that has any bearing on the children around this case. Yet the trial judge used that inadmissible hearsay to find that my client is somehow angry and needs anger management. Your Honor, the only testimony in the case that was in person, live, concerning my client in that regard, comes from Susan Felton, who is a trained employee of Kids Hope United, and her testimony is that she gave the family some counseling. The only thing she determined is that they needed some communication counseling and that it was successfully done, and, in fact, she put most of the communication problems in the family on the child, Shelby, who I characterized as a difficult child, and not on that McCarthy. And her testimony was that she kept having to remind Shelby of everything that her father does for her. And so based on this, we've come to the point that if you take the hearsay out of the judge's decision, basically all of his findings go out the window. Your Honors, I don't think it's a good idea or a fair idea to decide the best interest of children on hearsay evidence, and that's what Judge Hardigan did. He ruled on the best interest of the children based virtually totally on hearsay. And the only thing in his decision that I think was not based on a hearsay piece of evidence was the matter that the mother is now healthy, that she's overcome her psychological problems. And the interesting thing about that piece of evidence is that even the guardian in his argument indicated that he felt like the mother might benefit from having the children and that it might take the stressor out of her life. Should there be a new trial then? Judge, I think that's one alternative, yes. I think that you could reverse the matter outright because I don't think the judge has any findings in his decision. But a new trial would be a very acceptable result because I believe a new trial would lead to a different result. And that's what we would ask for on behalf of the petition. It's not harmless error, Your Honor. I think the matter to me that was most significant is that in order to warrant a reversal, an evidentiary ruling must have been substantially prejudicial and affected the outcome of the case. It is substantially prejudicial because of all of the matters which the trial court judge used in making a finding here. All of those matters are matters that were based on the DCFS report and nothing that the trial judge did in making the findings came from live testimony in the courtroom. I don't know if he didn't take notes about what people like Susan Feltman said in the courtroom or what. He went with the DCFS report even without a foundation, even though it's hearsay, even in the face of Patton v. Armstrong, which I think is the whole reason we just don't throw DCFS cases in front of the court and say, here, judge, decide where we're at. I think I've covered everything this morning that I wanted to cover in my points. If you had any questions, I'd be glad to entertain you. I appreciate the questions you have had. I'd ask you to reverse the trial judge and make the finding that DCFS – send the signal to the attorneys. DCFS reports just don't come in with evidence that DCFS workers must be subject to cross-examination. Thank you. Thank you, Mr. Roberts. And Mr. Keller, you may proceed, sir. Thank you for your honors. May it please the court, Mr. Roberts. In an idyllic world, Ward and Judy Cleveland do not divorce. However, in the real world, people do divorce, and more often than not, the trial court is faced with determining custody decision when they have less than perfect parents. And such is the case here. On the one hand, we have mom's suicide gesture or episode in 2009. On the other hand, we have the father's history of anger, temper problems, and violence. I think it's interesting that the father is not concentrating on the evidence that supports his theory that he should be the custodian, but rather focuses or attempts to focus on shortcomings in the mother's evidence. There was absolutely no evidence in the record to suggest that this one-time episode in 2009, the mother took an overdose of painkillers, that that had an adverse effect on the children then or now. There was no evidence presented that any mental illness or depression in the mother has an adverse effect on her ability to parent. In fact, testimony from Roberta Hinman said that mom has made remarkable progress in her treatment. She's capable of appropriate, effective parenting, and that she would, in fact, be the more appropriate custodian for these children. And I believe the record is filled with examples of dad's anger and violence, even without the DCFS report, which I'll get to later. He admitted on cross-examination that he struck the children. There was evidence in the record that he struck the daughter, girlfriend of his. I tried to explain that away, whether or not she had a hose and was getting people wet. I don't think striking a 13-year-old child, I believe, was appropriate. We have the evidence of Max Bean that was mentioned, about his military career, being angry and brutally abusive. And we have the in-camera interview of the children, which the court heard. The trial court evaluated all that evidence before it, in light of the Section 602 factors, and came to the conclusion that mom would be the more appropriate custodian. And in the trial court's finding, the trial judge did say the determining factor was the father's attitude, lack of self-control, and violent behavior toward his children. And it's black-letter law that the trial judge is in a superior position because he saw the witnesses observe their demeanor, that he's in a superior position to judge those things, and that his decision won't be overturned unless it's against the manifest weight of the evidence or it's a clear abuse of discretion. And we don't have that in this case. Now, with regard to the DCFS report, I was at the trial, and my recollection is that my argument was that the report was admissible under Illinois Rules of Evidence 803-8. I don't recall mentioning 6. But in any event, I believe reading that indicates that it is. It's a record report compiled by a public agency of matters observed pursuant to a duty imposed by law as to which matters there was a duty to report. DCFS is mandated by law to investigate reports of abuse or neglect. They're mandated by law to prepare a report. And I believe that counsel's reliance on the Patton v. Armstrong decision from 1972, I believe it's misplaced. In that case, the trial judge in a custody fight on his own won DCFS to evaluate the homes of the two parents. It wasn't offered into evidence. It wasn't admitted into evidence. It was just put in the court file. Was the same statute in effect when Patton was decided? It was not, and that's my point exactly. The difference there was, and Justice Jones in his argument said, well, it's an unofficial report, so on and so forth. The difference here is the DCFS report was mandated by law. It was an investigation that was required by law and mandated by the abuse and neglect of child reporting. So I believe it's admissible under that section. Also, Section 606E of the Marriage and Dissolution of Marriage Act says that previous statements made by the child relating to any allegations of abuse of a neglected child shall be admissible in evidence in a hearing concerning custody of or visitation with the child. So that DCFS report contains statements of the children relating to the allegations of the abuse. And so it would be admissible, I believe, under that statute as well. Now, a case that was cited by the father, although not argued today, was NRAJC and others, People v. Happen, where the court held that the admission of a complete DCFS file was error. First of all, that was an adjudicatory hearing as opposed to a custody trial. And as I cited the Johnson v. Weill case, the 2001 Supreme Court case, the court has broad discretion in admitting relevant evidence. And I believe that a DCFS report about allegations of abuse or neglect certainly is relevant. And as the court noted in Johnson v. Weill, child custody proceedings epitomize the need for maximum disclosure of information in the goal of the breach of justice. And so I believe the court was entitled to admit the report. And in Hallam, even though the court said that you should not have admitted the entire report, it was error to do that, the court said, well, it was harmless error because there was sufficient other evidence in the record to support the trial court's ruling. And I suggest that that is the case here. Even if you should find that, yes, the report or the entire report should not have been admitted, only the indicated portion of it that the Abuse and Neglect of Child Reporting Act refers to, it's presumed the trial judge only considers competent evidence in reaching his verdict. And I believe that's what the court did here. In summary, Your Honors, I don't believe you can say that the decision rewarding custody to the mother was an abuse of discretion. There was evidence in the record. The trial judge was faced with a situation where the father has a history of violence, has a history of having a temper. I believe when you read the record, the father's attitude is it's the child's fault, it's Shelby's fault. It was always Shelby's fault. He did not seem to want to take any responsibility. I believe the decision was correct, and I would ask the court to affirm the decision of the trial court. Thank you, sir. Any rebuttal, Mr. Roberts? With regard to the point that Mr. Keller makes about the trial judge only using competent evidence to reach a decision in the case, that is a presumption. But when the judge writes his decision and the only things he puts in that decision, paragraph after paragraph, are from the DCFS report, that's going to overcome that presumption. I just don't think that situation applies. And Mr. Keller, citing the statute under the Dissolution of Marriage Act that statements of children are admissible to show some kind of abuse, still has a problem. And what he doesn't recognize is that it's double hearsay, because that would mean that the person who took the statement from the child could come into court and testify. But you can't simply submit a report from that person without having that person come in. It's double hearsay. 805, the Eleanor Rules of Evidence, clearly covers that. And you have to have an exception for every level. And that's where this case runs into so much trouble, because it's hearsay on top of hearsay, and it is a very significant part of the trial judge's decision. It's about everything he rested on. And nowhere does he recite anything about the testimony of Susan Feldman who did the family counseling in his decision. And I just think he overlooked it, didn't realize how significant that is. There really is no other evidence of violence on my part, other than the Max Bean matter, which is right out of left field and shouldn't have even been considered relevant. And it brings up the question of how are militaries and people supposed to be treated when they're in court concerning their children, because there may be situations where people who have actually been a sniper in Afghanistan may appear before this court in Illinois concerning their children. I just don't think it applies at all. It's apples and oranges. So taking the things the judge considered out of the case, we think it's reversible, and we would be thrilled to have a retrial of the matter. Thank you. Thank you both very much for your briefs and your arguments. The court will take this matter under advisement and issue a decision in due course.